**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 23-309 (RC) |
| | : | |
| SHAMELL NAQUAN JOYNER, | : | Re Document Nos.:    51, 88, 89 |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION TO SEVER COUNTS 4–6 (ECF NO. 51); DENYING
DEFENDANT'S MOTION TO DISMISS COUNT 24 OR 26 (ECF NO. 88); DENYING DEFENDANT'S
MOTION TO DISMISS COUNTS 1–2 AND 7–24 AND COUNTS 9–10 AND 19–24 (ECF NO. 89)**

**I.  INTRODUCTION**

Defendant Shamell Naquan Joyner is charged with ten counts of Hobbs Act robbery, two counts of carjacking, two counts of interstate transportation of a stolen vehicle, ten counts of brandishing a firearm during a crime of violence, two counts of discharge of a firearm during a crime of violence, and two counts of unlawful possession of a firearm and ammunition by a felon. *See* Superseding Indictment, ECF No. 27.  A jury trial is scheduled to begin in this case on June 29, 2026.  In brief, Mr. Joyner stands accused of committing ten armed robberies and two armed carjackings in the District of Columbia, Maryland, and Virginia between April 12, 2023, and May 2, 2023.

Before the Court are several pre-trial motions from Mr. Joyner.  The parties have asked the Court to render an expedited decision on three of those motions to help them adequately prepare for trial.  First, Mr. Joyner has moved to sever Counts 4–6, which relate to one of the alleged carjackings, from the Superseding Indictment.  *See* Def.'s Mot. Severance Offenses ("Def.'s Mot. Severance"), ECF No. 51.  Second, he has moved to dismiss one of Counts 24 or 26 as multiplicitous.  *See* Def.'s Mot. Dismiss Count Twenty-Four or Twenty-Six ("Def.'s 1st

Mot. Dismiss"), ECF No. 88.  Third, he has also moved to dismiss Counts 1–2 and 7–24 for

failure to state an offense and Counts 9–10 and 19–24 for improper venue.  *See* Def.'s Mot.

Dismiss Hobbs Act Robbery & Related 924(c) Counts ("Def.'s 2d Mot. Dismiss"), ECF No. 89.

The Court heard oral arguments on the motions on June 4, 2026.  For the reasons below, it denies

the three motions.

## II.  FACTUAL BACKGROUND

Mr. Joyner was arrested on May 2, 2023, and on August 8, 2024, a federal grand jury

issued a Superseding Indictment, charging him with twenty-eight counts arising from ten alleged

armed robberies and two armed carjackings.  *See* Superseding Indictment.  Specifically, Mr.

Joyner is charged with ten counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); two

counts of carjacking, in violation of 18 U.S.C. § 2119(1); two counts of interstate transportation

of a stolen vehicle, in violation of 18 U.S.C. § 2312; ten counts of brandishing a firearm during a

crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); two counts of discharge of a

firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and two counts

of unlawful possession of a firearm and ammunition by a felon, in violation of 18 U.S.C.

§ 922(g)(1).  The Court summarizes the charges below.

## A.  Armed Robbery 1

According to the Government, early in the morning of April 12, 2023, Mr. Joyner robbed

a Falcon Fuel gas station in Washington, D.C., at gunpoint.  Gov't's Opp'n to Def.'s Mot.

Severance Offenses ("Gov't's Opp'n to Def.'s Mot. Severance") at 2–3, ECF No. 59.  Mr.

Joyner allegedly took property belonging to Falcon Fuel and two employees, some of which was

reportedly recovered during a search of Mr. Joyner's residence in Washington, D.C., on May 2,

2023.  *Id.* at 2.  In connection with Armed Robbery 1, the Superseding Indictment charges Mr.

Joyner with one count of Hobbs Act robbery (Count 1), one count of discharge of a firearm during the robbery (Count 2), and one count of unlawful possession of ammunition by a felon (Count 3). Superseding Indictment at 1–3.

### B.  Armed Carjacking 1

The next day, Mr. Joyner allegedly approached a Honda HR-V parked on L Street in Washington, D.C., leaned inside the opened passenger-side window, and, while pointing a gun at the owner, Z.S.M., demanded that he give Mr. Joyner his car, car fob, and wallet. Gov't's Opp'n to Def.'s Mot. Severance at 3. In connection with Armed Carjacking 1, the Superseding Indictment charges Mr. Joyner with one count of carjacking (Count 4), one count of brandishing a firearm during the carjacking (Count 5), and one count of interstate transportation of a stolen vehicle (Count 6). Superseding Indictment at 3–4.

### C.  Armed Robbery 2

The Government alleges that two days later, on April 15, 2023, Mr. Joyner robbed a 7-Eleven on Vermont Avenue in Washington, D.C., at gunpoint and took U.S. currency. Gov't's Opp'n to Def.'s Mot. Severance at 8–9. The Government represents that video surveillance footage from inside the store shows that the perpetrator of Armed Robbery 2 wore shorts, compression pants, socks, and sneakers consistent with the attire worn by the perpetrator of Armed Carjacking 1, as depicted in surveillance footage connected to Armed Carjacking 1. *Id.* at 8. Video footage reportedly also showed a Honda HR-V similar to the one stolen in Armed Carjacking 1 leaving the 7-Eleven after Armed Robbery 2. *Id.* at 9. In connection with Armed Robbery 2, the Superseding Indictment charges Mr. Joyner with one count of Hobbs Act robbery (Count 7) and one count of brandishing a firearm during the robbery (Count 8). Superseding Indictment at 4–5.

### D. Armed Robbery 3

Shortly after midnight on April 17, 2023, Mr. Joyner purportedly robbed a second 7-Eleven in Alexandria, Virginia, at gunpoint. Gov't's Opp'n to Def.'s Mot. Severance at 9–11. According to the Government, Mr. Joyner demanded that two employees empty the register and their wallets and, growing impatient, fired his gun at the floor. *Id.* at 9–10. One of the employees felt a pain in his leg and noticed bleeding. *Id.* The Government states that video surveillance footage from inside the store shows that the perpetrator of Armed Robbery 3 wore sneakers consistent with those worn by the perpetrator of Armed Carjacking 1 and Armed Robbery 2. *Id.* at 10. Furthermore, Mr. Joyner allegedly wore a distinctive sweatshirt during Armed Robbery 3 that was later recovered from the trunk of Z.S.M.'s Honda HR-V. *Id.* at 11. In connection with Armed Robbery 3, the Superseding Indictment charges Mr. Joyner with one count of Hobbs Act robbery (Count 9) and one count of discharge of a firearm during the robbery (Count 10). Superseding Indictment at 5–6.

### E. Armed Robbery 4

On April 30, 2023, Mr. Joyner allegedly robbed a third 7-Eleven on Georgia Avenue in Washington, D.C., at gunpoint. Gov't's Opp'n to Def.'s Mot. Severance at 11–14. The Government states that Mr. Joyner took U.S. currency and property belonging to an employee. *Id.* at 11–12. In connection with Armed Robbery 4, the Superseding Indictment charges Mr. Joyner with one count of Hobbs Act robbery (Count 11) and one count of brandishing a firearm during the robbery (Count 12). Superseding Indictment at 6–7.

### F. Armed Robbery 5

The following morning, on May 1, 2023, Mr. Joyner purportedly robbed a fourth 7-Eleven on 2nd Street in Washington, D.C., at gunpoint. Gov't's Opp'n to Def.'s Mot.

4

Severance at 14–16.  According to the Government, Mr. Joyner struck an employee in the back of the head with a gun and took U.S. currency.  *Id.* at 14–15.  In connection with Armed Robbery 5, the Superseding Indictment charges Mr. Joyner with one count of Hobbs Act robbery (Count 13) and one count of brandishing a firearm during the robbery (Count 14).  Superseding Indictment at 7–8.

### G.  Armed Robbery 6

On the same day, Mr. Joyner allegedly then robbed the Shop and Run on H Street in Washington, D.C., at gunpoint.  Gov't's Opp'n to Def.'s Mot. Severance at 16–19.  The Government claims he took U.S. currency belonging to the store and an employee.  *Id.* at 16–17.  In connection with Armed Robbery 6, the Superseding Indictment charges Mr. Joyner with one count of Hobbs Act robbery (Count 15) and one count of brandishing a firearm during the robbery (Count 16).  Superseding Indictment at 8–9.

### H.  Armed Robbery 7

The next day, shortly after midnight on May 2, 2023, Mr. Joyner allegedly robbed a fifth 7-Eleven on Connecticut Avenue in Washington, D.C., at gunpoint, taking U.S. currency and an employee's wallet.  Gov't's Opp'n to Def.'s Mot. Severance at 19–20.  In connection with Armed Robbery 7, the Superseding Indictment charges Mr. Joyner with one count of Hobbs Act robbery (Count 17) and one count of brandishing a firearm during the robbery (Count 18).  Superseding Indictment at 9–10.

### I.  Armed Robbery 8

An hour later, Mr. Joyner allegedly crossed into Maryland and robbed a sixth 7-Eleven on Georgia Avenue in Silver Spring at gunpoint.  Gov't's Opp'n to Def.'s Mot. Severance at 20–21.  The Government claims that Mr. Joyner took U.S. currency from the store and fled on foot.

*Id.* at 21.  In connection with Armed Robbery 8, the Superseding Indictment charges Mr. Joyner with one count of Hobbs Act robbery (Count 19) and one count of brandishing a firearm during the robbery (Count 20).  Superseding Indictment at 10–11.

### J.  Armed Robbery 9

After completing the armed robbery in Silver Spring, Mr. Joyner allegedly drove to Odenton, Maryland, and robbed a seventh 7-Eleven there at gunpoint.  Gov't's Opp'n to Def.'s Mot. Severance at 21.  The Government states that he took U.S. currency, packs of cigarettes, and lighters before fleeing on foot.  *Id.*  In connection with Armed Robbery 9, the Superseding Indictment charges Mr. Joyner with one count of Hobbs Act robbery (Count 21) and one count of brandishing a firearm during the robbery (Count 22).  Superseding Indictment at 11–12.

### K.  Armed Robbery 10 / Armed Carjacking 2

On that same night, in neighboring Hanover, Maryland, Mr. Joyner then allegedly robbed an Exxon at gunpoint and stole an Exxon employee's vehicle.  Gov't's Opp'n to Def.'s Mot. Severance at 21–25.  The Government alleges that Mr. Joyner approached the employee, I.B., in the Exxon's parking lot, pointed a semi-automatic handgun at him, and took U.S. currency and the key to I.B.'s gray Toyota RAV4.  *Id.* at 22.  The Government further states that video surveillance footage from the Exxon shows Mr. Joyner leaving on foot after the robbery.  *Id.* at 25.  Less than five minutes later, a gold GMC drove up to the Exxon's parking lot, and footage purportedly shows an individual exiting the GMC, sprinting toward I.B.'s Toyota RAV4, and driving away in the Toyota RAV4.  *Id.* at 25–26.

In connection with Armed Robbery 10 / Armed Carjacking 2, the Superseding Indictment charges Mr. Joyner with one count of Hobbs Act robbery (Count 23), one count of brandishing a firearm during the robbery (Count 24), one count of carjacking (Count 25), one count of

brandishing a firearm during the carjacking (Count 26), and one count of interstate transportation

of a stolen vehicle (Count 27).  Superseding Indictment at 12–14.  Counts 24 and 26 both arise

from Mr. Joyner's alleged brandishing of a firearm at Exxon employee I.B.

### L.  Mr. Joyner's Arrest

Early in the afternoon of May 2, 2023, law enforcement officers observed a gray Toyota

RAV4 parked in front of 450 Condon Terrace in Washington, D.C.  Gov't's Opp'n to Def.'s

Mot. Severance at 27.  A query of a law enforcement database confirmed to the officers that the

vehicle in question had been stolen earlier that day in Maryland.  *Id.*  The responding officers

approached the vehicle and detained two individuals who had been occupying it: the driver, who

later identified himself as Mr. Joyner, and the front-seat passenger, N.L., a relative of Mr.

Joyner.  *Id.*  After Mr. Joyner was removed from the vehicle, the officers observed, allegedly in

plain view on the driver's floorboard, a semi-automatic firearm consistent with the firearm

depicted in video surveillance capturing Armed Robbery 6 and Armed Robbery 10.  *Id.*  In

connection with Mr. Joyner's arrest, the Superseding Indictment charges him with one count of

unlawful possession of a firearm and ammunition by a felon (Count 28).[1]  Superseding

Indictment at 14.

### III.  ANALYSIS

Mr. Joyner now moves (1) to sever Counts 4–6 from the Superseding Indictment, (2) to

dismiss either Count 24 or 26 as multiplicitous, and (3) to dismiss Counts 1–2 and 7–24 for

---

[1] Although the Government states that "Counts 27–28 address possessory charges from Defendant's arrest on May 2, 2023," *see* Gov't's Opp'n to Def.'s Mot. Severance at 37, the Superseding Indictment charges Mr. Joyner with interstate transportation of a stolen vehicle in Count 27, *see* Superseding Indictment at 13–14.

failure to state an offense and Counts 9–10 and 19–24 for improper venue.  The Court addresses the three motions in turn.

### A.  Motion to Sever Counts 4–6

Counts 4–6 correspond to Armed Carjacking 1.  Mr. Joyner moves to sever them from the remaining counts of the Superseding Indictment and exclude them from his upcoming trial. *See* Def.'s Mot. Severance.  He argues that the carjacking, firearm, and transportation of stolen vehicle offenses charged in Counts 4–6 are "entirely unrelated" to the rest of the charged offenses and are therefore improperly joined under Federal Rule of Criminal Procedure 8(a). *Id.* at 2.  And even if joinder were appropriate under Rule 8(a), he argues that Counts 4–6 should be severed pursuant to Rule 14 because joinder would prejudice his defense. *Id.*  However, as explained below, Counts 4–6 are properly joined and severance is not warranted.

#### 1.  Counts 4–6 Are Properly Joined Pursuant to Rule 8(a)

Federal Rule of Criminal Procedure 8(a) permits joinder of two or more offenses in one indictment if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  The term "similar character" means "nearly corresponding, resembling in many respects, somewhat alike, or having a general likeness." *United States v. Treadwell*, 566 F. Supp. 80, 86 (D.D.C. 1983); *see also United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980). The term "transaction" can comprehend "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Treadwell*, 566 F. Supp. at 86.  And offenses are deemed to be "connected" when there is commonality of proof. *Id.*  In evaluating whether joinder is permissible, courts must "focus[ ] solely on the indictment and pre-trial submissions," not "the evidence presented at trial." *United States v. Gooch*, 665

F.3d 1318, 1334 (D.C. Cir. 2012).  Accordingly, "the Government need merely allege, not prove, the facts necessary to sustain joinder."  *Id.*

The Court finds that the offense of Armed Carjacking 1, set forth in Counts 4–6 of the Superseding Indictment, is properly joined under Rule 8(a).  As alleged by the Government, Armed Carjacking 1 arose out of the same series of interconnected and similar armed offenses that ultimately culminated in Mr. Joyner's arrest on May 2, 2023.  *See* Gov't's Opp'n to Def.'s Mot. Severance at 33.  The Superseding Indictment charges that Armed Carjacking 1 occurred on or about April 13, 2023, within the same three-week period as all other charged offenses.  Superseding Indictment at 3–4.  Furthermore, according to the Government, the Honda HR-V vehicle stolen in Armed Carjacking 1 provided a means for Mr. Joyner to facilitate the commission of Armed Robbery 2.  *See* Gov't's Opp'n to Def.'s Mot. Severance at 33 (noting that surveillance footage showed a Honda HR-V leaving the scene of Armed Robbery 2, which occurred only two days after Armed Carjacking 1).  These allegations suffice to show that Armed Carjacking 1 is of a "similar character" as other offenses charged in the Superseding Indictment.  Fed. R. Crim. P. 8(a); *see also United States v. Wilkins*, 538 F. Supp. 3d 49, 87 (D.D.C. 2021) (denying a motion to sever an assault charge from other sex trafficking charges due to the "general likeness" between the charges, including because the assault was allegedly used as a tactic to force victims into sex work); *United States v. Mitchell*, 502 F.3d 931, 963 (9th Cir. 2007) (upholding denial of a motion to sever carjacking and robbery charges that were "correlated" because the carjacking "provided the get-away vehicle" for the robbery).

Furthermore, "[t]he presumption in favor of joinder 'is especially strong where the respective charges require presentation of much the same evidence [and] testimony of the same witnesses,'" which the Government represents is the case here.  *United States v. McGill*, 815

F.3d 846, 924 (D.C. Cir. 2016) (quoting *United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999)); *see also* Gov't's Opp'n to Def.'s Mot. Severance at 33–36.  The Government notes, for example, that Mr. Joyner wore similar articles of clothing during Armed Carjacking 1 and during Armed Robberies 2 and 3, some of which were later recovered from the Honda HR-V. *See* Gov't's Opp'n to Def.'s Mot. Severance at 11, 33–34; *cf. United States v. Levi*, 45 F.3d 453, 455–56 (D.C. Cir. 1995) (upholding a denial of severance where "the perpetrator . . . wore similar clothing" in the different bank robberies at issue).  And the Government alleges that at the time of Mr. Joyner's arrest, law enforcement recovered physical evidence from the Toyota RAV4 stolen in Armed Carjacking 2 that was relevant to Armed Carjacking 1, including the cellphone of Mr. Joyner's relative, N.L., containing a photo of Mr. Joyner inside the stolen Honda HR-V.  *See* Gov't's Opp'n to Def.'s Mot. Severance at 34–35; *cf. United States v. Lewis*, No. 24-cr-144, 2024 WL 4932043, at *2 (D.D.C. Dec. 2, 2024) (holding that joinder was proper where "the physical and digital evidence underl[y]ing each count were 'seized simultaneously' and w[ould] require the same testimony from the law enforcement agents who executed the arrest [and search] warrant[s]").  Because there is alleged to be "commonality of proof" between Armed Carjacking 1 and the other charged offenses, joinder of Counts 4–6 is also proper.  *See Lewis*, 2024 WL 4932043, at *2.

### 2.  Severance Pursuant to Rule 14 Is Not Warranted

Even if joinder is proper under Rule 8(a), severance may be granted pursuant to Rule 14 if "the joinder of offenses . . . appears to prejudice a defendant."  Fed. R. Crim. P. 14(a).  "In determining whether offenses should be tried separately, the principal consideration 'is whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial [and prosecutorial] economy.'"  *Treadwell*, 566 F. Supp. at 86 (quoting *United States v. Brashier*, 548

10

F.2d 1315, 1323 (9th Cir. 1976)).  "The defendant seeking severance under Rule 14 carries the burden of demonstrating that failure to sever would result in prejudice."  *United States v. Lewis*, No. 19-cr-307, 2022 WL 1090612, at *2 (D.D.C. Apr. 11, 2022).

If there has been no misjoinder under Rule 8(a), the D.C. Circuit recognizes only three kinds of prejudice that warrant severance under Rule 14: (1) "the jury may cumulate evidence of the separate crimes," (2) "the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt," and (3) "the defendant may become 'embarrassed or confounded' in presenting different defenses to the different charges."  *Gooch*, 665 F.3d at 1336 (quoting *Blunt v. United States*, 404 F.2d 1283, 1288 (D.C. Cir. 1968)).  But "[j]oinder is the rule rather than the exception and the burden is upon a moving defendant to show facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial."  *Treadwell*, 566 F. Supp. at 86.

Without much elaboration, Mr. Joyner asserts that joinder here would give rise to the three recognized forms of prejudice.  *See* Def.'s Mot. Severance at 2.  The Court is not persuaded.  First, the risk of cumulation of evidence is "substantially reduced" when, as here, "the evidence of each crime is simple and distinct."  *Drew v. United States*, 331 F.2d 85, 91 (D.C. Cir. 1964).  Although there is some overlapping evidence, the distinctions between the separate offenses are clear in the Superseding Indictment.  The Court believes the Government will be able to "present the evidence in such a manner that . . . the jury will be able to treat the evidence relevant to each charge separately and distinctly," *United States v. Lewis*, No. 19-cr-307, 2021 WL 2809819, at *4 (D.D.C. July 6, 2021) (quoting *United States v. Daniels*, 770 F.2d 1111, 1117 (D.C. Cir. 1985)), especially "with a proper charge," *Drew*, 331 F.2d at 91.

11

Second, although "joinder of offenses in a single trial may be prejudicial when there is a great disparity in the amount of evidence underlying the joined offenses," *see Lucero v. Kerby*, 133 F.3d 1299, 1315 (10th Cir. 1998), the Government represents that the evidence here is "distributed equally among the charged counts," *see* Gov't's Opp'n to Def.'s Mot. Severance at 38.[2]  This mitigates the risk that the jury will infer guilt on certain counts based on an improper belief as to criminal disposition.  And "jury instructions are usually sufficient to minimize any disparities in evidence." *United States v. Manner*, 887 F.2d 317, 324 (D.C. Cir. 1989).

Third, Mr. Joyner's counsel stated at the motions hearing on June 4, 2026, that joinder would prejudice Mr. Joyner because he may wish to testify on the counts underlying Armed Robberies 7–10, which took place on May 2, 2023, but not on the counts underlying earlier charged offenses, including Armed Carjacking 1.  Hr'g Tr. at 19:25–20:15.  The D.C. Circuit has "recognized that the accused may become embarrassed or confounded in presenting separate defenses . . . where the accused desires to testify but to limit his testimony to less than all of the joined counts." *Robinson v. United States*, 459 F.2d 847, 855 n.53 (D.C. Cir. 1972) (citation modified).  This is because a defendant contemplating this course of action often faces "pressure to testify as to all or none" of the counts, given "the unfavorable appearance of testifying on one charge while remaining silent on another." *Baker v. United States*, 401 F.2d 958, 976 (D.C. Cir. 1968).  Nevertheless, severance is not required every time a defendant alleges that he wishes to offer limited testimony.  Instead, as the D.C. Circuit has made clear, the defendant must "make[ ]

---

[2] At the motions hearing on June 4, 2026, Defense counsel rejected this representation, noting, for example, that the Government will present testimony from a cooperating witness only for Armed Robberies 7–10.  Hr'g Tr. at 18:22–19:19.  Nevertheless, the Government has noted that other evidence, including forensic evidence and CCTV footage, will be distributed fairly evenly across the different charged offenses, including Armed Carjacking 1. *See id.* at 23:14–24:5.  Ultimately, the Court has not been persuaded that there is a "great disparity" of evidence underlying the joined offense. *Lucero*, 133 F.3d at 1315.

a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *Id.* at 977. In doing so, "it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." *Id.* (citation modified).

According to his counsel, Mr. Joyner may wish to take the stand to rebut the testimony of the Government's sole cooperating witness, who is expected to testify that Mr. Joyner carried out Armed Robberies 7–10 on May 2, 2023. *See* Hr'g Tr. at 20:3–15. Still, Mr. Joyner would choose not to testify for the earlier charged offenses—including Carjacking 1 (Counts 4–6) and Armed Robberies 1–6 (Counts 1–3, 7–16)—because there is no cooperator testimony identifying him as the perpetrator of those offenses and because of the risk that the Government might seek to impeach any testimony he gives based on his prior convictions. *See id.* At this point, however, Mr. Joyner's proffer is insufficient to establish a genuine risk of undue prejudice from the joinder of Counts 4–6. Assuming that Mr. Joyner has sufficiently "important" rebuttal testimony to provide, *see Baker*, 401 F.2d at 977, he has not explained how severance of Armed Carjacking 1 would materially change his calculus in deciding whether to testify on Armed Robberies 7–10. Prior to those robberies, Mr. Joyner is alleged to have committed not only Armed Carjacking 1 but also Armed Robberies 1–6, the latter of which he has not moved to sever. Thus, even if Carjacking 1 is severed, he would still face the same "pressure to testify as to all or none" of the counts. *Id.* at 976.

*    *    *

13

For the reasons above, joinder of Counts 4–6 is proper.  Furthermore, Mr. Joyner has failed to carry his burden to show "a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Accordingly, the Court denies Mr. Joyner's motion to sever Counts 4–6.

### B.  Motion to Dismiss Count 24 or 26 as Multiplicitous

The Court next considers Mr. Joyner's motion to dismiss Count 24 or 26 of the Superseding Indictment as multiplicitous pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(ii).  *See* Def.'s 1st Mot. Dismiss.  An indictment is said to be multiplicitous when it "charges the same offense in more than one count."  *United States v. Mahdi*, 598 F.3d 883, 887 (D.C. Cir. 2010).  A multiplicitous indictment "often creates 'a problem'" at sentencing due to the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, *id.* (quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999)), which prohibits "multiple punishments for the same offense," *id.* (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  Mr. Joyner argues that Counts 24 and 26 are multiplicitous because both charge him with violating 18 U.S.C. § 924(c)(1)(A)(ii), which prohibits brandishing a firearm in furtherance of a crime of violence.  *See* Def.'s 1st Mot. Dismiss at 1; Superseding Indictment at 12–13. Specifically, Count 24 charges Mr. Joyner with brandishing a firearm during Armed Robbery 10 (Count 23), while Count 26 charges the same conduct with respect to Armed Carjacking 2 (Count 25).  *Id.*

Although predicated on distinct underlying offenses, the Government acknowledges that Counts 24 and 26 "arise from a single use of a firearm"—that is, Mr. Joyner's "brandishing of a handgun at Exxon employee I.B. while robbing I.B. and the Exxon of cash and taking I.B.'s car

14

keys before fleeing in I.B.'s vehicle." Gov't's Opp'n to Def.'s Mot. Dismiss Count Twenty-Four

or Twenty-Six ("Gov't's Opp'n to Def.'s 1st Mot. Dismiss") at 2, ECF No. 91. Under binding

D.C. Circuit precedent, a single use of a firearm cannot support multiple convictions under

§ 924(c), even where the multiple § 924(c) counts are predicated on distinct underlying offenses.

*See United States v. Wilson*, 160 F.3d 732, 749 (D.C. Cir. 1998). Therefore, and as the

Government concedes, Mr. Joyner "could not be punished" twice for the § 924(c) offense

charged in Counts 24 and 26 without violating the Double Jeopardy Clause. Gov't's Opp'n to

Def.'s 1st Mot. Dismiss at 2.

Because Counts 24 and 26 are multiplicitous, Mr. Joyner urges the Court to compel the

Government to elect between them and to dismiss the other before trial. Def.'s 1st Mot. Dismiss

at 4. He argues that precedent and the Federal Rules of Criminal Procedure treat multiplicity as a

"defect in the indictment" that needs to be corrected before trial. *See* Reply in Supp. of Def.'s

Mot. Dismiss Count Twenty-Four or Twenty-Six ("Def.'s Reply in Supp. 1st Mot. Dismiss") at

1–2, ECF No. 93 (quoting Fed. R. Crim. P. 12(b)(3)(B)). The Government, in contrast, insists

that Mr. Joyner's multiplicity claim is "better sorted out post-trial." Gov't's Opp'n to Def.'s 1st

Mot. Dismiss at 6 (quoting *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999)). In the

Government's view, because the Double Jeopardy Clause's prohibition against multiple

punishments for the same offense will not be implicated until sentencing, Mr. Joyner will not

suffer prejudice if the Government is allowed to proceed on both Counts 24 and 26 at trial. *Id.* at

3–4. The Government notes that if the jury ultimately convicts Mr. Joyner on both counts, the

Court would be able to protect him against multiple punishments by entering judgment on only

one of the counts. *Id.* at 7.

As set forth below, the Court will allow the Government to prosecute Counts 24 and 26 simultaneously.  But first, the Court takes the opportunity to clarify that although a multiplicitous indictment is, in a sense, "defective," as Mr. Joyner observes, *see* Def.'s 1st Mot. Dismiss at 4 (quoting *United States v. Harris*, 959 F.2d 246, 250 (D.C. Cir. 1992)), this is not because multiplicitous counts inherently violate the Double Jeopardy Clause.  As the Supreme Court explained in *Ohio v. Johnson*, "[w]hile the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting [the defendant] for such multiple offenses in a single prosecution."  467 U.S. 493, 500 (1984).  The Supreme Court reaffirmed this principle in *Ball v. United States*, holding that although the defendant in that case could not be convicted and punished under two statutes for the "single act" of stealing a revolver—where one statute criminalized receipt and the other possession of a firearm—the Double Jeopardy Clause presented no "bar to the Government's proceeding with prosecution simultaneously under the two statutes."  470 U.S. 856, 859–61 (1985).

In Mr. Joyner's view, *Ohio* and *Ball* are inapposite because those cases concerned challenges to multiplicitous convictions and sentences based on double jeopardy principles, whereas Mr. Joyner challenges the multiplicitous *form* of his indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(ii).  Def.'s Reply in Supp. 1st Mot. Dismiss at 4 & n.2.  To be sure, caselaw "distinguish[es] between objections to multiplicity in the indictment itself and objections to multiplicitous convictions and sentences."  *United States v. Zalapa*, 509 F.3d 1060, 1063 (9th Cir. 2007); *see also Harris*, 959 F.2d at 250 (distinguishing a "defect in the sentencing" from a defect "in the indictment").  As Mr. Joyner emphasizes, where a multiplicity "defect appears on the face of the indictment," Rule 12(b)(3) in fact requires a defendant to

challenge this defect before trial on pain of waiver. *See Harris*, 959 F.2d at 250–51; *see also*

Fed. R. Crim. P. 12(b)(3)(B)(ii) ("[D]efect[s] in the indictment," including on "multiplicity"

grounds, "must be raised by pretrial motion if the basis for the motion is then reasonably

available and the motion can be determined without a trial on the merits."); Def.'s Reply in

Supp. 1st Mot. Dismiss at 4 n.3.

But just because multiplicity in the indictment is a defect that a defendant is obligated to

challenge before trial under Rule 12(b)(3) does not mean that the trial court is required to correct

that defect before trial, as Mr. Joyner further argues. *See* Def.'s Reply in Supp. 1st Mot. Dismiss

at 3; *see also United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 123–24 (D.D.C. 2012) ("While

the defendants are required to assert their argument that charges in the Superseding Indictment

are multiplicitous through pre-trial motion, multiplicity claims are better sorted out post-trial."

(citation modified)). The purpose of Rule 12(b)(3)'s timing requirement is simply to allow the

trial court the opportunity to "inquir[e] into an alleged defect" and, "if necessary," cure it before

"go[ing] to the burden and expense of a trial." *Harris*, 959 F.2d at 250 (quoting *Davis v. United

States*, 411 U.S. 233, 241 (1973)). But neither Rule 12(b)(3) nor the precedents Mr. Joyner cites

obligate the Court to cure multiplicitous charges before trial.

On the flip side, *Ohio* and *Ball* do not mean that the resolution of multiplicity claims can

presumptively be deferred until sentencing. It is true that multiplicitous counts can often be

remedied at the sentencing phase, "since the primary evil of multiplicity is double punishment

for the same offense." *Sanford*, 859 F. Supp. 2d at 121. But multiplicity breeds other evils

too—"[f]or when an indictment charges numerous offenses arising from the same conduct it may

falsely suggest to a jury that a defendant has committed not one but several crimes." *United

States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992) (citation modified); *see also United

*States v. Phillips*, 962 F. Supp. 200, 202 (D.D.C. 1997) ("[A]t least some of the harm from multiplicitous prosecution occurs during the course of the trial itself, and not merely at sentencing." (citation omitted)).  In considering Mr. Joyner's multiplicity challenge, this secondary harm is foremost in the Court's mind.

As explained above, Mr. Joyner's Superseding Indictment is multiplicitous because it charges the same § 924(c) offense in two counts.  "That conclusion having been reached, the decision whether to compel the prosecution to elect among multiplicitous counts before trial is within the discretion of the trial court." *Phillips*, 962 F. Supp. at 201; *see also United States v. Bowyer*, 985 F. Supp. 153, 155 (D.D.C. 1997).  Mr. Joyner argues that permitting the Government to proceed to trial on a concededly defective indictment will prejudice him because, by charging the same offense twice, the Superseding Indictment will "create[ ] an exaggerated impression of [his] criminal activity" in jurors' minds.  Def.'s Reply in Supp. 1st Mot. Dismiss at 6 (quoting *United States v. Polizzi*, 257 F.R.D. 33, 36 (E.D.N.Y. 2009)).  The Government counters that Mr. Joyner's concerns about multiplicity are premature because the multiplicitous § 924(c) counts are predicated on the distinct offenses of robbery and carjacking, which the jury must find that Mr. Joyner committed before he can be convicted on the associated § 924(c) counts.  Gov't's Opp'n to Def.'s 1st Mot. Dismiss at 6.  Moreover, the Government maintains that "any risk that the jury might draw an improper inference from an additional charge . . . can be addressed through appropriate limiting jury instructions." *Id.* at 3.

Upon consideration of the parties' arguments, the Court finds that any prejudice to Mr. Joyner from the simultaneous prosecution of Counts 24 and 26 is outweighed by countervailing considerations.  And in any event, the risk of prejudice is minimal.  First, Mr. Joyner agrees that both § 924(c) counts arise from the same alleged conduct—brandishing a handgun at a gas

18

station employee while robbing the gas station and stealing the employee's vehicle—and the Government represents that the evidence it intends to introduce to prove the single act of brandishing will be the same for both the robbery and carjacking counts. *See* Def.'s 1st Mot. Dismiss at 2; Gov't's Opp'n to Def.'s 1st Mot. Dismiss at 4. Allowing the Government to proceed on both counts will therefore not expose jurors to more evidence of Mr. Joyner's alleged criminal activity than the alternative. *Cf. Sanford*, 859 F. Supp. 2d at 124 ("The defendants have not demonstrated that they would suffer any prejudice from allowing the government to proceed on the allegedly multiplicitous counts, particularly since the defendants assert that the charges encompass the same underlying facts and conduct."). Second, as the Government remarks, if the jury finds that Mr. Joyner did not commit the robbery predicate offense for Count 24 or the carjacking predicate offense for Count 26, he could not be convicted on the corresponding § 924(c) counts, which would moot his multiplicity claim.[3] *See United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006) ("If the jury convicts on no more than one of the multiplicitous counts, there has been no violation of the defendant's right to be free from double jeopardy, for he will suffer no more than one punishment."). Third, although the Court accepts that there is prejudice inherent in "the accumulation of multiple charges," it finds that "the duplication here

---

[3] Mr. Joyner suggests that because Counts 24 and 26 arise from the same set of facts, his multiplicity claim does not turn on "factual issues requiring development at trial" and can therefore be resolved now. Def.'s Reply in Supp. 1st Mot. Dismiss at 6 (citation modified). Although Mr. Joyner is correct that a single act of brandishing a firearm underlies the § 924(c) offense charged in both counts, the jury has not yet decided whether he committed the robbery predicate offense for Count 24 or the carjacking predicate offense for Count 26. "Section 924(c) crimes are not ordinary substantive offenses [but] depend on the commission of a concurrent— and predicate—'crime of violence.'" *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 136 (D.D.C. 2015). The commission of an underlying crime of violence is therefore an element of a § 924(c) offense, and the jury must separately find that Mr. Joyner committed the robbery charged in Count 23 and the carjacking charged in Count 25 before it can find him guilty on Counts 24 and 26, respectively.

19

does not significantly affect the overall heft of the indictment, and the harm that can flow from the existence of multiple charges can be ameliorated with proper jury instructions." *United States v. Manafort*, 313 F. Supp. 3d 311, 316 (D.D.C. 2018). Accordingly, Mr. Joyner's motion to dismiss Count 24 or 26 is denied.

### C. Motion to Dismiss Counts 1–2 and 7–24 for Failure to State an Offense and Counts 9–10 and 19–24 for Improper Venue

Finally, the Court considers Mr. Joyner's second motion to dismiss. *See* Def.'s 2d Mot. Dismiss. Mr. Joyner moves to dismiss Counts 1–2 and 7–24 for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), as well as Counts 9–10 and 19–24 for improper venue pursuant to Rule 12(b)(3)(A)(i) and the Sixth Amendment to the U.S. Constitution. These counts consist of Hobbs Act robbery and related § 924(c) (firearm) offenses. The Court addresses Mr. Joyner's two asserted grounds for dismissal in turn.

### 1. Motion to Dismiss for Failure to State an Offense

Under Rule 12(b)(3), a defendant may move to dismiss an indictment in whole or in part on the grounds that it fails to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). "The operative question is whether the allegations [of the indictment], if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *Sanford*, 859 F. Supp. 2d at 107. On a pre-trial motion to dismiss for failure to state an offense, the district court must "presume the allegations of the indictment to be true." *Id.* (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009)). Furthermore, the court "is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *Id.* (quoting *Sunia*, 643 F. Supp. 2d at 60). "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the

indictments returned by the grand jury." *Sunia*, 643 F. Supp. 2d at 60 (quoting *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001)).  "A valid indictment must: (1) allege the essential facts constituting the offense, (2) allege each element of the offense, so that fair notice is provided, and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense." *United States v. Martinez*, 764 F. Supp. 2d 166, 170 (D.D.C. 2011) (quoting *Sunia*, 643 F. Supp. 2d at 77).

Mr. Joyner moves to dismiss Counts 1, 7, 9, 11, 13, 15, 17, 19, 21, and 23 (the "Hobbs Act robbery counts") for failure to state an offense for Hobbs Act robbery, along with Counts 2, 8, 10, 12, 14, 16, 18, 20, 22, and 24 (the "related § 924(c) counts"), which allege that Mr. Joyner brandished or discharged a firearm during those robberies.  The Superseding Indictment alleges in each Hobbs Act robbery count that Mr. Joyner

> did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951.

Superseding Indictment at 1–12.  For each count, the Superseding Indictment then briefly describes the locations, properties, and individuals Mr. Joyner is alleged to have robbed.  For example, in Count 7, it alleges that Mr. Joyner

> did unlawfully take and obtain, and attempt to take and obtain, property belonging to 7-Eleven . . . from the presence of an employee, and against his will by means of actual and threatened force, violence, and fear of injury, immediate and future, to his person . . . .

*Id.* at 4.  The other Hobbs Act robbery counts "follow the same format and include identical language, other than the items allegedly taken and the locations of the alleged robberies."  Def.'s 2d Mot. Dismiss at 2.

Mr. Joyner asserts that the Hobbs Act robbery counts are deficient because they fail to allege *mens rea*, or criminal intent, which is required under the Hobbs Act.  *See id.* at 1.  That is,

21

one of the elements that "the government must prove beyond a reasonable doubt" to establish

that a defendant committed a Hobbs Act robbery is that "the defendant *knowingly and*

*deliberately* obtained or attempted to obtain property from another." *United States v. Edwards*,

324 F. Supp. 2d 10, 12 (D.D.C. 2004) (emphasis added). In Mr. Joyner's Superseding

Indictment, however, the Hobbs Act robbery counts do not allege that Mr. Joyner acted

"knowingly" or "deliberately." *See generally* Superseding Indictment.

Although the Government agrees that *mens rea* is a required element of Hobbs Act

robbery, *see* Gov't's Opp'n to Def.'s Mot. Dismiss Hobbs Act Robbery & Related 924(c) Counts

("Gov't's Opp'n to Def.'s 2d Mot. Dismiss") at 7, ECF No. 92, it argues that the Hobbs Act

robbery counts sufficiently allege the *mens rea* element because the counts track the statutory

language of the Hobbs Act—which does not use the words "knowingly" or "deliberately"—and

because there is an implied allegation in the counts that Mr. Joyner acted with a culpable mental

state, *see id.* at 6–8. The Court finds the Government's arguments persuasive.

As an initial matter, the Hobbs Act robbery counts closely track the statutory language of

the Hobbs Act. Under the Hobbs Act, criminal liability is imposed on anyone who "in any way

or degree obstructs, delays, or affects commerce or the movement of any article or commodity in

commerce, by robbery or extortion . . . or commits or threatens physical violence to any person

or property in furtherance of a plan or purpose" to do so. 18 U.S.C. § 1951(a). The term

"robbery" is defined as "the unlawful taking or obtaining of personal property from the person or

in the presence of another, against his will, by means of actual or threatened force, or violence,

or fear of injury, immediate or future, to his person or property." *Id.* § 1951(b)(1). Similarly, the

Hobbs Act robbery counts in the Superseding Indictment allege that Mr. Joyner "did unlawfully

obstruct, delay, and affect . . . commerce . . . and the movement of articles and commodities in

22

such commerce, by robbery." Superseding Indictment at 1–12. The Hobbs Act robbery counts also incorporate the Act's definition of robbery, alleging that Mr. Joyner "did unlawfully take and obtain . . . property . . . from the presence of [individuals] against their will by means of actual and threatened force, violence, and fear of injury." *See id.*

As the Government notes, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citation modified); *see also* Gov't's Opp'n to Def.'s 2d Mot. Dismiss at 6–7. Mr. Joyner responds that "[t]he general rule that indictments in the language of the statute are permissible does not apply where the statute omits an essential element of the offense." *United States v. Haldeman*, 559 F.2d 31, 123 n.260 (D.C. Cir. 1976); *see also* Def.'s Reply in Supp. of Def.'s Mot. Dismiss Def.'s Hobbs Act Robbery & Related 924(c) Counts ("Def.'s Reply in Supp. 2d Mot. Dismiss") at 2, ECF No. 94. But the Court finds that the language of the Hobbs Act fully conveys the requisite *mens rea* element, and that the Hobbs Act robbery counts of the Superseding Indictment—which reproduce this statutory language nearly verbatim—therefore do not omit an essential element of the offense.

Specifically, although the Hobbs Act does not denote the required *mens rea* for robbery in explicit terms, its statutory language "include[s] an implicit mens rea element of general intent—or knowledge—as to the actus reus of the offense." *United States v. García-Ortiz*, 904 F.3d 102, 108 (1st Cir. 2018) (citation modified). This is because the Hobbs Act's use of the term "robbery," which definitionally requires that property be taken "against [a person's] will, by means of actual or threatened force, or violence, or fear of injury," *see* 18 U.S.C. § 1951(b)(1),

"necessarily implies knowing and willful conduct," *see United States v. Tobias*, 33 F. App'x 547, 549 (2d Cir. 2002).  In other words, if an indictment charges a defendant with committing a robbery by using "actual and threatened force," as the Superseding Indictment here does, the indictment plainly imparts an allegation that the defendant committed the robbery "voluntarily and intentionally, and not because of a mistake or accident."  *United States v. Woodruff*, 296 F.3d 1041, 1047 (11th Cir. 2002).  "Indeed, it is difficult to imagine how a person could 'unlawfully take and obtain personal property . . . by means of actual and threatened force, violence, and fear of immediate injury' by mistake or accident," given that "[t]he very use of the tools of violence . . . for the specific purpose of taking the property of another can only be imagined as being done knowingly."  *Id.*

Mr. Joyner relies on a Ninth Circuit opinion, *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999), to press his contrary claim.  *See* Def.'s 2d Mot. Dismiss at 3–4.  In *Du Bo*, the Ninth Circuit held that an indictment charging Hobbs Act extortion, 18 U.S.C. 1951(a), was "fatally flawed" because it did not "specify the necessary mens rea" for a Hobbs Act conviction: that the defendant acted "knowingly or willingly."  186 F.3d at 1179 (citation omitted).  Specifically, the indictment at issue "charge[d] Du Bo only with 'unlawfully' affecting commerce by the 'wrongful' use of force," which the Ninth Circuit explained was insufficient to "connote the proper mens rea."  *Id.*

However, despite some superficial similarities, the Court believes that *Du Bo* is distinguishable from the case at hand.  For one, *Du Bo* dealt with Hobbs Act extortion, which is a "separate offense[ ]" from Hobbs Act robbery.[4]  *United States v. Hatley*, 61 F.4th 536, 538 (7th

---

[4] The Court is not aware of any case—and Mr. Joyner does not cite any—extending *Du Bo* beyond the Hobbs Act extortion context to hold that an indictment for Hobbs Act robbery must explicitly allege a *mens rea* element.

Cir. 2023).  Whereas the Hobbs Act defines robbery as the "unlawful taking . . . of personal property" from a person "against his will, by means of actual or threatened force, or violence, or fear of injury," *see* 18 U.S.C. § 1951(b)(1), extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right," *see id.* § 1951(b)(2).  One notable difference between these definitions is that, unlike extortion, robbery expressly requires that property be taken "against [the victim's] will."  In the Court's view, this distinction lessens *Du Bo*'s persuasive force in the Hobbs Act robbery context.  Because Hobbs Act robbery cannot be completed unless the victim's property is taken "against his will, by means of actual or threatened force," the Court finds that, whatever might be said about Hobbs Act extortion, the statutory language setting forth Hobbs Act robbery definitionally and unambiguously denotes intentionality.[5]  *See Tobias*, 33 F. App'x at 549 ("[T]he term 'robbery' . . . necessarily implies knowing and willful conduct.").

Moreover, like other courts that have distinguished *Du Bo*, this Court "do[es] not read *Du Bo* as requiring that a Hobbs Act indictment specifically include the word 'knowingly.'" *Woodruff*, 296 F.3d at 1048 n.3.  Indeed, there is no requirement that an indictment allege *mens rea* in such explicit terms, "so long as the allegation that the crime was committed with the requisite state of mind may be inferred from other allegations in the indictment."  *Id.* at 1046 (quoting *United States v. Gray*, 260 F.3d 1267, 1283 (11th Cir. 2001)); *see also United States v. McLennan,* 672 F.2d 239, 242 (1st Cir. 1982) ("Indictments, however, need not always plead required scienter elements in precise statutory terms such as 'willfully' or 'knowingly' so long as other words or facts contained in the indictment necessarily or fairly import guilty knowledge."

---

[5] The Court expresses no view on whether the statutory language for Hobbs Act extortion necessarily connotes knowing and willful conduct or whether an indictment charging Hobbs Act extortion is deficient if it does not explicitly allege a *mens rea* element.

(citation modified)).  Here, the Court finds that the allegations of the Hobbs Act robbery counts—which accuse Mr. Joyner of taking property from persons "against [their] will by means of actual and threatened force, violence, and fear of injury"—are sufficient for that purpose.

In any event, to the extent that *Du Bo* can be read to support a contrary finding, that Ninth Circuit opinion is not binding on this Court.  *See City Stores Co. v. Lerner Shops of D.C., Inc.*, 410 F.2d 1010, 1014 (D.C. Cir. 1969).  Nor does it persuade the Court that Mr. Joyner's indictment is deficient.  Instead, absent contrary guidance from the D.C. Circuit, the Court follows the lead of the numerous Circuits that have soundly rejected the precise argument Mr. Joyner advances.  *See, e.g.*, *Woodruff*, 296 F.3d at 1047 ("By alleging that [the defendant] 'did unlawfully take and obtain personal property . . . by means of actual and threatened force, violence, and fear of immediate injury,' the indictment not only tracked the language of the Hobbs Act, but also necessarily alerted the defendant that he was charged with having knowingly committed the [robbery]."); *United States v. Jackson*, 513 F. App'x 51, 55 (2d Cir. 2013) ("Although the indictment [for Hobbs Act robbery] did not specifically contain the words 'knowingly' or 'willfully,' the plain and common-sense reading of the indictment put the defendant on notice of what the charges against him were."); *United States v. Oliver*, No. 01-3223, 2002 WL 31474532 (3d Cir. Nov. 5, 2002) ("In order to meet the intent requirement of robbery, [the defendant's] indictment referred to 18 U.S.C. § 1951(b)(1) for the definition of robbery.  This reference was sufficient.").

In sum, the Court concludes that the Hobbs Act robbery counts of the Superseding Indictment adequately allege the requisite *mens rea* element.  These counts are thus not deficient for failure to state an offense.  Consequently, neither are the related § 924(c) counts. Accordingly, the Court denies Mr. Joyner's motion to dismiss Counts 1–2 and 7–24.

2.  Motion to Dismiss for Improper Venue

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)(i) and the Sixth Amendment, Mr. Joyner also moves to dismiss Counts 9–10 and 19–24, which charge him with Hobbs Act robbery and related § 924(c) offenses, for improper venue.  *See* Def.'s 2d Mot. Dismiss at 5–6, 9; Fed. R. Crim. P. 12(b)(3)(A)(i).  Mr. Joyner argues that venue is not proper in the District of Columbia for these counts because the underlying robberies alleged therein occurred in Maryland and Virginia.  *See* Def.'s 2d Mot. Dismiss at 6.  Yet generally, "the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.  This requirement stems from the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. amend. VI.

At trial, the Government must prove that venue is proper by a preponderance of the evidence.  *United States v. Lam Kwong-Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991).  But on a pre-trial motion to dismiss an indictment for improper venue, the district court "assesses only whether the allegations of the indictment, if true, would suffice to establish venue."  *United States v. Powers*, 40 F.4th 129, 134 (4th Cir. 2022).  "When a defendant is charged with multiple counts, venue must be proper on each count."  *United States v. Young-Bey*, No. 21-cr-661, 2023 WL 3303819, at *3 (D.D.C. May 8, 2023) (quoting *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000)).

The Hobbs Act does not contain a specific venue provision.  In *United States v. Rodriguez-Moreno*, the Supreme Court explained that when Congress is not explicit as to venue, courts should determine venue "from the nature of the crime alleged and the location of the act or acts constituting it."  526 U.S. 275, 279 (1999) (quoting *United States v. Cabrales*, 524 U.S. 1,

27

6–7 (1998)).  "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."  *Id*.  "A crime is 'committed,' for venue purposes, where its 'essential conduct elements' are completed."  *United States v. Jin*, No. 23-cr-091-2, 2025 WL 2409749, at *13 (D.D.C. Aug. 19, 2025) (quoting *Rodriguez-Moreno*, 526 U.S. at 280–81).  To determine which elements of an offense are "essential conduct elements," courts "examine 'the key verbs in the statute defining the criminal offense,'" *see United States v. Crop Growers Corp.*, 954 F. Supp. 335, 352 (D.D.C. 1997) (quoting *United States v. Georgacarakos*, 988 F.2d 1289, 1293 (1st Cir. 1993)), as well as "any other elements that the Government must prove to obtain a conviction," *see Jin*, 2025 WL 2409749, at *13 (citing *Rodriguez-Moreno*, 526 U.S. at 280).

If venue is proper in the District of Columbia for the Hobbs Act robbery counts, so too is it for the related § 924(c) counts.  *See Rodriguez-Moreno*, 526 U.S. at 282.  Thus, the Court focuses its venue analysis on the offense of Hobbs Act robbery.  The Court begins by identifying the "essential conduct elements" of substantive Hobbs Act robbery.  As noted above, the Hobbs Act penalizes whoever "in any way or degree obstructs, delays, or affects commerce . . . by robbery."  18 U.S.C. § 1951(a).  Although the D.C. Circuit has not undertaken the *Rodriguez-Moreno* test with respect to Hobbs Act robbery, courts outside of this jurisdiction have observed that the "key verbs" of § 1951 proscribe not simply "robbery," but more precisely "obstruct[ing], delay[ing], or affect[ing] commerce . . . *by* robbery."  18 U.S.C. § 1951(a) (emphasis added); *see also, e.g.*, *United States v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012).  Thus, "[a] conviction for Hobbs Act robbery requires proving two elements: the underlying robbery and an effect on interstate commerce."  *United States v. Chavis*, No. 23-4610, 2025 WL 2170724, at *6 (4th Cir. July 31, 2025).  This means that venue for Hobbs Act robbery is proper wherever the underlying

28

robbery took place—that is, "the unlawful taking or obtaining of personal property . . . by means of actual or threatened force, or violence, or fear of injury," 18 U.S.C. § 1951(b)(1)—or wherever interstate commerce is thereby affected.[6]  *See Davis*, 689 F.3d at 186.

Here, although Counts 9, 19, 21, and 23 describe robberies in Maryland and Virginia, the Government advances two independent bases for establishing venue in the District of Columbia. First, it argues that Hobbs Act robbery is a "continuing offense that may be prosecuted in any district in which a part of the crime was committed."  Gov't's Opp'n to Def.'s 2d Mot. Dismiss at 19.  For a "continuing offense," or one "begun in one district and completed in another, or committed in more than one district," Congress has provided that venue is proper "in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  The Government contends that venue is proper in the District of Columbia for these counts because Mr. Joyner committed parts of the robberies charged therein in the District of Columbia.  *See* Gov't's Opp'n to Def.'s 2d Mot. Dismiss at 17–23.

The D.C. Circuit has not addressed whether Hobbs Act robbery is a continuing offense within the meaning of § 3237(a).[7]  Nevertheless, its opinion in *United States v. Harrington*, 108

---

[6] Mr. Joyner cites *United States v. Swann*, 441 F.2d 1053 (D.C. Cir. 1971), for the proposition that impact on commerce alone is insufficient to establish venue.  *See* Def.'s 2d Mot. Dismiss at 8.  In *Swann*, the relevant statute—18 U.S.C. § 1503 (1964)—prohibited "endeavor[ing] to influence, intimidate or impede any witness."  The D.C. Circuit found that venue could not lie in the District of Columbia in a case where, while in Maryland, the defendant shot a woman who was a witness in an ongoing D.C. criminal proceeding, despite the apparent effect of the defendant's actions in that proceeding.  *Id.* at 1054–55.  *Swann* is distinguishable, however.  Unlike § 1503, the Hobbs Act specifically prohibits "*affect*[*ing*] *commerce*" through robbery.  18 U.S.C. § 1951(a) (emphasis added).  Thus, venue for Hobbs Act robbery can lie wherever a robbery's effects on commerce are felt.

[7] As the Government notes, courts in other jurisdictions have determined that Hobbs Act robbery is a continuing offense.  *See* Gov't's Opp'n to Def.'s 2d Mot. Dismiss at 19–20; *see also United States v. Ashley*, No. 420-cr-318-ALM-KPJ-1, 2022 WL 4091965, at *2 (E.D. Tex. July 5, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 4084423 (E.D. Tex. Sept. 6, 2022).  Nevertheless, these authorities do not establish that Hobbs Act robbery is

F.3d 1460 (D.C. Cir. 1997), strongly suggests that a Hobbs Act robbery can continue past the initial removal, or asportation, of property.  In *Harrington*, the defendant challenged the sufficiency of the evidence supporting his conviction for aiding and abetting his partner in the use of a firearm during a Hobbs Act robbery, in violation of 18 U.S.C. §§ 924(c) and 2.  *See Harrington*, 108 F.3d at 1464, 1470.  The defendant stressed that he had waited inside a getaway car while his partner robbed a restaurant, and that he did not know his partner would "actively employ" a weapon inside the restaurant.  *Id.* at 1470–71.  The D.C. Circuit sidestepped this issue, however, because the evidence established that the defendant had subsequently "tak[en] the wheel in a high-speed effort to escape the police . . . [even] after he saw [his partner] firing his gun at pursuing police officers."  *Id.* at 1471.  The D.C. Circuit explained that "the robbery did not end when [the partner] left the restaurant" but continued during the police chase, by which time there was no doubt that the defendant had aided and abetted his partner *and* witnessed his use of a firearm.  *Id.*  In considering whether the robbery was still ongoing, the D.C. Circuit observed that although the Hobbs Act does not "specify[ ] precisely when an individual robbery should be considered complete," robbery at common law was held to continue "as long as the robber in the immediate aftermath of taking the property indicates by his actions that he is not satisfied with the location of the stolen property."  *Id.*  Applying that principle, the D.C. Circuit reasoned that the partner had been "unsatisfied with the location of the stolen money" after leaving the restaurant, "as manifested by his attempt to reach a getaway car and transport himself and the stolen money to a safe place."  *Id.*

---

"definitionally a continuing offense."  *United States v. Gause*, No. 23-cr-190, at 11 (D.D.C. Aug. 12, 2025), ECF No. 217.  As another court in this District has observed, "whether any particular Hobbs Act robbery will prove to be a continuous offense will depend upon the facts and circumstances of each offense, including the government's theory of liability and the evidence that relates to each charge."  *Id.* at 17.

Based on a continuing offense theory, the Government represents that it intends to present evidence at trial that Mr. Joyner brought stolen property from Maryland and Virginia back to the District of Columbia; that he lived in the District during all of the challenged robberies, which would reasonably suggest that the robberies began in the District; and that he planned, prepared, and took substantial steps in furtherance of the robberies, including by recruiting an accomplice, while still located in the District. *See* Gov't's Opp'n to Def.'s 2d Mot. Dismiss at 20–23. As *Harrington* shows, proof that Mr. Joyner transported stolen property to the District of Columbia could support the notion that parts of the robberies occurred in the District. *See* 108 F.3d at 1471; *see also United States v. Ali*, 982 F. Supp. 2d 85, 88 (D.D.C. 2013) (collecting cases and explaining that "the crime of robbery continues beyond a perpetrator's initial asportation with the property of another to the point in time when the perpetrator has won his way to a place of temporary safety" (citation modified)). But the Government has not cited authorities directly supporting its further contentions that acts taken within the District in the lead-up to or in preparation of the challenged robberies are also a part of those robberies for purposes of establishing venue.

For example, the Government cites a Second Circuit case, *United States v. Davis*, for the proposition that "[i]n the case of a Hobbs Act robbery," proper "venue will lie in any district where a substantial step toward robbery took place." 689 F.3d at 187; *see also* Gov't's Opp'n to Def.'s 2d Mot. Dismiss at 19–20. But in *Davis*, the defendant was "convicted of attempted rather than completed Hobbs Act robbery." 689 F.3d at 187. That distinction is significant. *See United States v. Crocker*, No. 22-4120, 2023 WL 4247255, at *3 n.1 (10th Cir. June 29, 2023) ("Hobbs Act robbery and attempted Hobbs Act robbery are different crimes comprising different elements."). "Attempt is an inchoate offense, requiring that a defendant have taken a 'substantial

step' in furtherance of the intended crime to support conviction." *Davis*, 689 F.3d at 187 (citation modified).  Accordingly, where the crime being charged is attempted Hobbs Act robbery, venue will lie in any district in which the defendant committed a substantial step in furtherance of the robbery.  *Id.*  But where the crime being charged is completed Hobbs Act robbery, venue will lie only in a district in which part of the "conduct constituting the offense" took place—that is, either the underlying robbery or the effect it had on interstate commerce. *See Rodriguez-Moreno*, 526 U.S. at 279.

In this case, while Counts 9, 19, 21, and 23 allege that Mr. Joyner "did unlawfully obstruct, delay, and affect, *and attempt* to obstruct, delay, and affect, commerce . . . by robbery," *see* Superseding Indictment at 5, 10–12 (emphasis added), the Government's own narration of the relevant facts makes clear that it believes that Mr. Joyner completed all of the robberies charged in those counts, *see* Gov't's Opp'n to Def.'s Mot. Severance at 9–11, 20–27.  Yet Mr. Joyner "cannot be convicted of both attempt and a substantive [Hobbs Act] offense, let alone be punished for both." *United States v. Bicaksiz*, 194 F.3d 390, 395 n.7 (2d Cir. 1999).  In the interest of avoiding unfair surprise at trial and helping Mr. Joyner prepare an adequate defense, the Court will order the Government to inform Mr. Joyner, if it has not already, whether it intends to proceed on an attempt theory as to any of the counts in the Superseding Indictment. *Cf. Gause*, No. 23-cr-190, at 17 ("Defendants are entitled to know whether the government is proceeding on an attempt theory.").  And if the Government intends both to pursue substantive Hobbs Act charges with respect to Counts 9, 19, 21, and 23, and to rely on preparatory conduct to establish venue in the District of Columbia for these counts, it will have to justify to the Court how acts like driving to the site of a planned robbery or recruiting an accomplice for a robbery are part of the "conduct constituting the offense" of Hobbs Act robbery.  At present, the Court

doubts that it could do so. As the Second Circuit explained in *Davis*, under its venue precedents, "what is begun or continued in a district" to support venue under § 3237(a) "must be a part of the actual charged crime, not merely steps preparatory to the crime."  689 F.3d at 186.

Another issue with the Government's continuing offense argument is that, at this stage, it may not rely on "evidence beyond the indictment" to defeat a venue-based challenge to the facial adequacy of the indictment.  *Powers*, 40 F.4th at 134.  Yet the Government did not explain in its brief whether it believes that the allegations of the Superseding Indictment alone are sufficient to establish venue in the District of Columbia on a continuing offense theory.

The Court nevertheless reviews the pertinent allegations.  Counts 9, 19, 21, and 23 of the Superseding Indictment all charge that "within the District of Columbia and elsewhere," Mr. Joyner "did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce . . . by robbery . . . in that [he] did unlawfully take and obtain, and attempt to take and obtain, property belonging to" stores and individuals located in Maryland and Virginia. Superseding Indictment at 5, 10–12.  To establish venue in the District of Columbia for these counts pursuant to § 3237(a), the counts must include allegations that at least some part of the charged conduct transpired in the District of Columbia.  *See United States v. Parker*, No. 25-cr-96, 2026 WL 523841, at *5 (D.D.C. Feb. 25, 2026).

Mr. Joyner argues that these counts fail to do so because no facts are alleged "supporting the government's contention that Mr. Joyner committed any portion of the robberies in D.C." Def.'s Reply in Supp. 2d Mot. Dismiss at 5.  But that is not exactly the case.  Although the Superseding Indictment charges that Mr. Joyner took property from locations in Maryland and Virginia, it further alleges that "within the District of Columbia and elsewhere," Mr. Joyner affected interstate commerce by robbery.  *Cf. Young-Bey*, 2023 WL 3303819, at *6 (deeming

sufficient to establish venue an indictment for money laundering alleging that "the acts at issue took place 'in the District of Columbia and elsewhere'"). Admittedly, the Superseding Indictment does not explain precisely how Mr. Joyner did so, or which parts of the charged conduct (the robbery, the effect on interstate commerce, or both) occurred "within the District of Columbia." But "[t]here is no requirement that the indictment make out the government's case or provide any details as to the logistics of the alleged offense." *United States v. McHugh*, No. 21-cr-453, 2023 WL 2384444, at *3 (D.D.C. Mar. 6, 2023). Nor is there a requirement, as far as the Court can tell, that an indictment charging that an offense occurred within a particular district "and elsewhere" specify which parts of the offense occurred in that district and which parts occurred elsewhere. On that point, it bears emphasizing that the allegations in the Superseding Indictment that Mr. Joyner took property from stores and individuals in Maryland and Virginia do not foreclose the possibility that at least some of the conduct comprising those underlying robberies occurred in the District of Columbia, too. *Cf. Carter v. United States*, 223 F.2d 332, 334 (D.C. Cir. 1955) ("[S]o long as the essential ingredient of asportation continues, the crime of robbery is still in progress.").

In any event, the Superseding Indictment plainly alleges proper venue in the District of Columbia under the Government's second theory: that by robbing stores and individuals in Maryland and Virginia, Mr. Joyner affected commerce in the District of Columbia. *See* Gov't's Opp'n to Def.'s 2d Mot. Dismiss at 23–29. As discussed, venue for substantive Hobbs Act robbery lies not only wherever the underlying robbery took place, but also wherever interstate commerce is thereby affected. *See Davis*, 689 F.3d at 186; *Bowens*, 224 F.3d at 313 ("[I]n a prosecution under the Hobbs Act, venue is proper in any district where commerce is affected because the terms of the statute itself forbid *affecting commerce* in particular ways."). "This is

34

consistent with Congress's ability to 'provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates.'" *Davis*, 689 F.3d at 186–87 (quoting *United States v. Johnson*, 323 U.S. 273, 275 (1944)).  The Superseding Indictment's allegations that Mr. Joyner "obstruct[ed], delay[ed], and affect[ed] . . . commerce" within the District of Columbia "by robbery" thus independently suffice to establish venue in the District, regardless of where the underlying robberies took place.  *See Ramirez v. United States*, 898 F. Supp. 2d 659, 667 (S.D.N.Y. 2012) (holding that venue for a Hobbs Act robbery charge was proper in the Southern District of New York because the defendants "affected interstate commerce" in the district by selling stolen cocaine in the Bronx, "even though the robbery itself did not take place" in that district).

The Government also explains that it intends to prove the interstate commerce element with evidence that the stores in Maryland and Virginia that Mr. Joyner robbed served residents from the District of Columbia, that Mr. Joyner deprived a specific District resident of the ability to engage in commerce by stealing his wallet, and that Mr. Joyner brought stolen property back to the District.  *See* Gov't's Opp'n to Def.'s 2d Mot. Dismiss at 24–27.  Such evidence certainly could establish the required effect on interstate commerce, which, under the Hobbs Act, need only be "minimal." *United States v. Lopez*, 860 F.3d 201, 214 (4th Cir. 2017); *see also United States v. Rose*, 891 F.3d 82, 86 (2d Cir. 2018) ("If the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act." (citation modified)).  "As the standard jury instructions for Hobbs Act offenses make clear, either monetizing the spoils of criminal conduct or depriving local residents of the ability to engage in commerce may suffice to show the *de minimis* effect required by the statute." *Gause*, No. 23-cr-190, at 17; *see also*

35

O'Malley, 2A Fed. Jury Prac. & Instr. § 53:04 (6th ed. 2026 update) ("The term 'obstructs, delays, or affects commerce' means any action which, in any manner or to any degree, interferes with, changes, or alters the movement or transportation or flow of goods, merchandise, money, or other property in commerce.").

Again, though, while the Government must prove venue at trial by a preponderance of the evidence, "[a]ll that is required [at this point] is that the Government allege venue without a facially obvious defect." *Young-Bey*, 2023 WL 3303819, at *6. The Government has done so here. If Mr. Joyner "wishes to argue that venue is improper by challenging the Government's factual assertions" and evidence, "he may do so at trial." *Parker*, 2026 WL 523841, at *5. But for the moment, because the Superseding Indictment adequately alleges venue in the District of Columbia, the Court denies Mr. Joyner's motion to dismiss Counts 9–10 and 19–24.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to sever Counts 4–6 (ECF No. 51) is **DENIED**; Defendant's motion to dismiss Count 24 or 26 (ECF No. 88) is **DENIED**; and Defendant's motion to dismiss Counts 1–2 and 7–24 and Counts 9–10 and 19–24 (ECF No. 89) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 5, 2026                                      RUDOLPH CONTRERAS
                                                         United States District Judge

36