**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 23-309 (RC) |
| | : | |
| SHAMELL NAQUAN JOYNER, | : | Re Document No.:    150 |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION TO EXCLUDE UNAUTHENTICATED PHOTOGRAPHS**

**I.  INTRODUCTION**

Just before a jury trial began in his case, Defendant Shamell Naquan Joyner moved to exclude the Government from offering six still images at trial—namely, Government Exhibits 202 through 205 and 211 through 212 (the "Speedway Screenshots")—that were purportedly taken from a surveillance video at the Speedway gas station at 620 South Patrick Street in Alexandria, Virginia.  *See* Def.'s Mot. Exclude Unauthenticated Photographs ("Def.'s Mot."), ECF No. 150.  At trial, Metropolitan Police Detective Thomas O'Donnell testified that he traveled to the Speedway as part of his investigation of an armed carjacking charged in this case, reviewed the gas station's CCTV footage, and personally created the screenshots at issue from the footage.  *See* July 15 PM Tr. at 74:15–77:18.  Because the original CCTV footage was not preserved, however, Mr. Joyner objects to the admission of the Speedway Screenshots on authentication and spoliation grounds.  *See* Def.'s Mot. at 1; Def.'s Reply in Supp. Def.'s Mot. ("Def.'s Reply") at 3, ECF No. 159.  For the reasons stated on the record, and as further explained below, this motion is denied.

## II.  FACTUAL BACKGROUND

Among other offenses, Mr. Joyner is charged with carjacking a 2021 Honda HR-V from L Street, NW, Washington, D.C. on the afternoon of April 13, 2023.  *See* Superseding Indictment at 3, ECF No. 27.  According to the Government, after Mr. Joyner forced out the HR-V's owner, Z.S.M., from the vehicle, Mr. Joyner stole Z.S.M.'s wallet and credit card.  *See* Gov't's Opp'n to Def.'s Mot. ("Gov't's Opp'n") at 2, ECF No. 155.  As part of his investigation of the carjacking, Detective O'Donnell testified that he interviewed Z.S.M. and learned that his stolen credit card was used at the Speedway gas station in Alexandria shortly after the carjacking.  *See* July 15 PM Tr. at 73:3–74:10.  A few days after the carjacking, Detective O'Donnell stated that he traveled to the Speedway, at which point an employee allowed him to review the gas station's CCTV footage.  *Id.* at 77:1–22.

Detective O'Donnell observed on the footage that at 5:38 PM on April 13, 2023, a vehicle consistent with the carjacked HR-V pulled up to the gas station, after which the driver exited the vehicle, made a transaction at the gas station, and then drove off in the vehicle.  *Id.* at 78:11–79:6.  Detective O'Donnell proceeded to export the footage onto a hard drive, which he took back to his office and later used to create screenshots of the vehicle and its driver.  *Id.* at 79:14–19.  These still images are the Speedway Screenshots that the Government sought to admit.  Detective O'Donnell testified that he maintained possession of a physical copy of the video footage, which he later turned over to the special agent in charge of the investigation.  *Id.* at 81:6–14.  The physical copy has unfortunately been lost.

At trial, in addition to Detective O'Donnell, the Government called as a witness Earl Winterling, an Asset Protection Specialist for 7-Eleven.  Mr. Winterling testified that 7-Eleven has acquired all Speedway gas stations, including the one at 620 South Patrick Street in

Alexandria, Virginia, and that in his role, he has access to and has become familiar with Speedway's video systems. *See* July 14 AM Tr. at 24:4–25. Mr. Winterling testified to Speedway's general recordkeeping practices and testified that in April of 2023, the Speedway in question maintained a functioning video system. *Id.* at 25:13–19.

### III.  ANALYSIS

Mr. Joyner objects to the admission of the Speedway Screenshots on authentication grounds because, in his view, neither Detective O'Donnell nor Mr. Winterling were able to establish through trial testimony that the video footage from which the Speedway Screenshots were taken was accurately maintained on the day in question. As a result, Defense counsel argues that a proper foundation for the authenticity of the images has not been laid pursuant to Federal Rule of Evidence 901. *See* July 15 PM Tr. at 105:7–12. Alternatively, Mr. Joyner argues that the Government's failure to preserve the original footage warrants exclusion of the screenshots. *See* Def.'s Reply at 3. The Court finds that exclusion is not warranted on either authentication or spoliation grounds.

### A.  Authentication

Federal Rule of Evidence 901(a) governs the authentication of evidence. To satisfy the requirement of authenticating an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "The question for the Court under Rule 901 is whether the proponent of the evidence has 'offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is.'" *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006) (quoting 5 Federal Rules of Evidence Manual § 901.02[1] at 901-5–901-6). To make this determination, the court must evaluate "whether there is enough support in the record to warrant a reasonable

person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (citation modified). One way to authenticate an item of evidence under Rule 901 is through the "testimony of a witness with knowledge" that the "item is what it is claimed to be." Fed. R. Evid. 901(b)(1) (citation modified).

"The threshold for the Court's determination of authenticity is not high." *Safavian*, 435 F. Supp. 2d at 38; *see also United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992) ("The rule does not erect a particularly high hurdle."). "The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the *jury* ultimately might do so." *Id.* Accordingly, this standard does not "require the proponent 'to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.'" *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) (quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir.1999)).

Under Rule 901's liberal standard, the combined testimonies of Mr. Winterling and Detective O'Donnell are sufficient to authenticate the Speedway Screenshots. As the Government argues, Mr. Winterling "laid the foundation . . . that this particular Speedway location kept video camera . . . in the normal course of its business." July 15 PM Tr. at 105:19–25; *see also* July 14 AM Tr. at 30:3–6 (The Government: "Mr. Winterling, based on your position and the access to the records that you have, in April of 2023, did Speedway maintain this camera system for a business purpose?" Mr. Winterling: "Yes, sir."). The Defense counters that neither Mr. Winterling nor Detective O'Donnell can establish that the Speedway's video system maintained accurate footage on the day that Z.S.M.'s credit card was fraudulently used. *See* July 15 PM Tr. at 105:7–12. It is true that Mr. Winterling was unable to confirm whether the Speedway system maintained reliable footage that day. *See* July 14 AM Tr. at 29:9–22.

However, Detective O'Donnell testified that when he personally reviewed the footage, just a few days after the incident in question, he verified that the Speedway's video system's time stamps matched the real time by comparing the live footage with the time on his iPhone. *See* July 15 PM Tr. at 77:19–78:10.

Certainly, the Government's proffered evidence does not "prove beyond any doubt" that the Speedway Screenshots are accurate snapshots of CCTV footage that reliably depicted the events that transpired at the gas station at around 5:38 PM on April 13, 2023. *Hassanshahi*, 195 F. Supp. 3d at 48. But Mr. Joyner's asserted flaws in authentication "go to the weight of the evidence instead of its admissibility." *Id.* (citation omitted). In light of Mr. Winterling's testimony that the Speedway maintained a camera system for business purposes in April of 2023 and Detective O'Donnell's testimony that this system maintained accurate records a few days after April 13, the Court finds that there is sufficient evidence "to warrant a reasonable person" in finding that the Speedway Screenshots are what they purport to be. *See Blanchard*, 867 F.3d at 6 (citation modified).

### B. Spoliation

Mr. Joyner alternatively argues that the Government's failure to preserve Detective O'Donnell's copy of the original CCTV footage warrants exclusion of the Speedway Screenshots under Federal Rule of Criminal Procedure 16. *See* Def.'s Reply at 3. Rule 16(a)(1)(E)(ii) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect" items such as "photographs," including "copies or portions" of such items, if, among other things, "the government intends to use the item in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E)(ii). Prior to a request for evidence, "the duty of disclosure is operative as a duty of preservation." *United States v. Harris*, No. 20-cr-108, 2021 WL 1546541, at *2 (D.D.C. Apr.

20, 2021) (citation omitted).  Here, the original CCTV footage was arguably a "cop[y] or portion[ ]" of the Speedway Screenshots that the Government intended to introduce in its case-in-chief, meaning it had a duty to preserve the original footage.  "When the Government has failed to preserve evidence, the Court has discretion to impose a wide range of sanctions" pursuant to Rule 16.  *United States v. Vanterpool*, No. 25-cr-138-1, 2026 WL 810005, at *6 (D.D.C. Mar. 24, 2026).  But "although Rule 16 gives trial judges the option of suppressing evidence as a result of [a party's] discovery violations, such a severe sanction would seldom be appropriate where," as here, "the trial court finds that [the party's] violation did not result from its bad faith and that a less drastic remedy . . . will mitigate any unfair prejudice."  *United States v. Gray-Burriss*, 791 F.3d 50, 55–56 (D.C. Cir. 2015) (citation modified).  Rather than excluding the Speedway Screenshots, the Court will instead instruct the jury regarding the Government's failure to preserve the original footage.[1]

---

[1] For example, the Court could draw on Instruction 2.322 ("Late Disclosure or Non-Disclosure of Evidence") from the Criminal Jury Instructions for the District of Columbia.  Such instruction could read as follows:

> You heard testimony about screenshots allegedly depicting a fraudulent transaction at a Speedway gas station and about how the Government did not preserve the full surveillance video from which the screenshots were captured.  The Government was required to preserve and disclose the full video to Mr. Joyner.  Because the Government failed to do so, Mr. Joyner did not have the opportunity to investigate the full video and possibly present additional evidence related to unpreserved portions of the video.  You may consider the Government's failure to preserve and disclose the full video and give it as much weight as in your judgment it deserves.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to exclude unauthenticated photographs (ECF No. 150) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 16, 2026                                     RUDOLPH CONTRERAS
                                                          United States District Judge

7