**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 23-309 (RC) |
| | : | |
| SHAMELL NAQUAN JOYNER, | : | Re Document Nos.:   181, 182, 184 |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM OPINION**</u>

**DENYING DEFENDANT'S MOTIONS FOR A MISTRIAL**

## I.  INTRODUCTION

A jury trial in this case began on June 29, 2026.  After nearly three weeks of testimony, the jury began deliberations on July 21.  In the middle of deliberations, Defendant Shamell Joyner twice moved for a declaration of a mistrial as to all counts of the Superseding Indictment, which charges him in twenty-eight counts with committing ten armed robberies and two armed carjackings across the District of Columbia, Maryland, and Virginia between April and May of 2023.  His first motion takes issue with an instruction the Court gave in response to a jury question about whether it would be permissible to infer Mr. Joyner's intent on certain counts based on evidence relating to other counts.  Def.'s 1st Mot. Mistrial ("Def.'s 1st Mot."), ECF No. 181.  His second motion is based on the jury's exposure to extraneous evidence during deliberations.  Def.'s 2d Mot. Mistrial ("Def.'s 2d Mot."), ECF Nos. 182, 184.  For the reasons below, both motions are denied.

## II.  LEGAL STANDARD

"A mistrial is a severe remedy—a step to be avoided whenever possible, and one to be taken only in circumstances manifesting a necessity therefor."  *United States v. McLendon*, 378

F.3d 1109, 1112 (D.C. Cir. 2004) (quoting *United States v. Clarke*, 24 F.3d 257, 270 (D.C. Cir. 1994)).  In ruling on a motion for a mistrial, the "single most important consideration" for the court is "the extent to which the defendant was unfairly prejudiced."  *Id.*; *see also United States v. McGill*, 815 F.3d 846, 895 (D.C. Cir. 2016) ("No mistrial would be warranted in the absence of unfair and irremediable prejudice.").  To make that determination, the court "consider[s] a number of factors, including the force of the unfairly prejudicial evidence, whether that force was mitigated by curative instructions, and the weight of the admissible evidence that supports the verdict."  *McLendon*, 378 F.3d at 1112.

### III.  ANALYSIS

#### A.  First Motion for a Mistrial

Mr. Joyner first moves for a mistrial based on an instruction the Court gave in response to a jury question on July 22.  A day prior, the jury had requested clarification on the specific-intent element applicable to the federal carjacking offenses, 18 U.S.C. § 2119(1), charged in Counts Four and Twenty-Five of the Superseding Indictment.  On the morning of July 22, the jury asked a follow-up question: "In the consideration of any individual count, are we permitted to use all of the evidence in the case or do we only use the evidence that is chronologically or situationally tied to that count?  For example, can an action on a separate date inform intent to cause serious bodily harm at a separate date?"  July 22 Tr. at 8:5–11.

That same morning, the Court convened the parties to hear their positions on this question.  The Government submitted that the jury should be permitted to infer intent on one charge from evidence related to other charges.  *Id.* at 5:24–6:6.  Defense counsel disagreed. While recognizing that evidence of other crimes can be admissible under Federal Rule of Evidence 404(b) to prove intent, Defense counsel argued that the separate charges here were too

dissimilar for evidence between them to be cross-admissible for that purpose.  *Id.* at 6:18–7:5.

The Court accepted the Government's position.  In responding to the jury's question, the Court

differentiated between inferring criminality and inferring intent.  Thus, the Court instructed the

jury that although it could not "infer criminality based on evidence for one count to determine

another," it could nevertheless "consider facts alleged in one count" while considering another

"for purposes of determining an intent."  *Id.* at 8:5–9:7.  Deliberations resumed.

Early the next day, however, Mr. Joyner moved for a mistrial.  In his motion, he raised a

more refined objection to the Court's instruction—that the Government had failed to satisfy Rule

404(b)'s notice requirements.  Def.'s 1st Mot. at 6.  Under Rule 404(b), when the prosecution

intends to offer evidence at trial of "any other crime, wrong, or act" of the defendant, it must

"provide reasonable notice" of this to the defendant "in writing before trial," or during trial for

good cause.  Fed. R. Evid. 404(b)(2)(A), (C).  Additionally, the prosecution must "articulate in

the notice the permitted purpose for which [it] intends to offer the evidence and the reasoning

that supports the purpose."  *Id.* Rule 404(b)(2)(B).  Here, the Government had previously

indicated that it would seek to cross-admit evidence between the different charges to establish

the *identity* of the perpetrator of the charged offenses under Rule 404(b)—but not that it would

seek to do the same to prove *intent*.  Def.'s 1st Mot. at 2.

The Court gave the Government the opportunity to oppose Mr. Joyner's motion in

writing.  Later that same day, on July 23, the Government filed its opposition.  *See* Gov't's

Opp'n to Def.'s 1st Mot., ECF No. 183.  The Government maintained that the Court's instruction

to the jury was not erroneous, but it nevertheless suggested, "out of an abundance of caution,"

that the Court retract the instruction.  *Id.* at 1.  When the Court heard oral argument on the

3

motion the next morning, on July 24, the Government acknowledged that it might not have provided proper notice under Rule 404(b) with respect to evidence of intent.

With the benefit of full briefing on the issue, the Court agrees with Mr. Joyner that the Government failed to provide proper notice. Even if the Government provided general notice of its intent to use Rule 404(b) evidence at trial, it neither specified that it sought to use evidence from the distinct charges to prove intent nor articulated "reasoning that supports the purpose." Fed. R. Evid. 404(b)(2)(B). Because the Government failed to provide notice, the jury was likely not entitled to infer intent on one count from evidence related to other counts. *But see United States v. Chambers*, No. 21-1389, 2022 WL 6831645, at *3 (2d Cir. Oct. 12, 2022) (finding that the government was not required to provide Rule 404(b) notice before the jury was permitted to consider evidence from certain counts to infer the defendant's "intent, preparation, plan, [or] knowledge" in other counts, because although Rule 404(b) "conditions the *admissibility* of 'other crimes' to prove 'motive, opportunity, [or] intent,' on the 'prosecution's provid[ing] reasonable notice,'" that notice requirement was not implicated where the evidence at issue "was properly admitted as direct evidence of Chamber's commission of the several charged offenses" and "[i]ts admission into evidence did not depend on Rule 404(b)").

In any event, even if the prior instruction was erroneous, Mr. Joyner has not persuaded the Court that any prejudice resulting from that instruction is incurable. Immediately after hearing oral argument on the motion, the Court agreed to retract this instruction. The Court informed the jury, in pertinent part:

> Upon further reflection, [I am] going to revoke one of the prior instructions I gave
> you, which was the one about using information in one count to determine intent
> on another. . . . I am striking that previous instruction and you are not to follow it.

Instead, the answer to the question is no. You may not use the evidence related to one count to establish that defendant committed the [allegations] in another count. July 24 Tr. at 19:14–20:1.  The Court emphasized that the jury's findings with respect to one count should not influence its verdict with respect to any other count.  *Id.* at 20:1–6.  It then explained, at the Government's suggestion, that the only exception to that general rule was that the jury could use evidence from other counts to "determin[e] beyond a reasonable doubt . . . the identity of the individual that is alleged to have committed the crime for [a] specific count," provided that the jury also found beyond a reasonable doubt that Mr. Joyner committed the actions alleged in those other counts.[1]  *Id.* at 20:12–25.

The Court believes that its curative instruction sufficiently "mitigated . . . the force" of any unfair prejudice to Mr. Joyner generated by the prior instruction.  *McLendon*, 378 F.3d at 1112.  First, once Mr. Joyner brought the issue of improper notice to the Court's attention, the Court gave the curative instruction as soon as the parties finished briefing and arguing Mr. Joyner's motion.  *Cf. United States v. Davis*, 663 F.2d 824, 833 (9th Cir. 1981) (holding that the district court "appropriately cured" any error in its instruction to the jury about "possible inferences to be drawn from the evidence concerning intent" when it "promptly instructed the jury to disregard the incorrect instruction, and reinstructed the jury properly").  Second, the Court assured itself through a jury poll that no juror would have trouble or hesitation in disregarding the old instruction and following the new one.  July 24 Tr. at 21:12–17.  The Court has no reason to doubt that the jury will be unable to follow its curative instruction.  *See United*

---

[1] The Court agreed to include to instruct the jury regarding the cross-admissibility of evidence between separate charges for the purpose of establishing identity—but not intent—after finding that the Government had provided proper notice under Rule 404(b) of its intent to admit evidence for that purpose.

*States v. Burroughs*, 935 F.2d 292, 295 (D.C. Cir.1991) (holding that, "[u]nless there is some good reason for finding otherwise . . . courts proceed on the basis that the jury does comply" with cautionary instructions); *United States v. Schwartz*, 702 F. App'x 748, 754–55 (10th Cir. 2017) (finding no unfair prejudice where the district court "expressly directed the jury to disregard" an erroneous instruction after "initially discover[ing] its mistake" and "offered several curative instructions which juries are presumed to follow"). Accordingly, Mr. Joyner's first motion for a mistrial is denied.

**B. Second Motion for a Mistrial**

On the afternoon of July 23, Mr. Joyner filed a second motion for a mistrial based on the jury's exposure the previous day to two pieces of extrinsic evidence during deliberations. The exposure happened as the jury was examining physical evidence—including a Pittsburgh Steelers sweatshirt and a two-toned jacket recovered on May 5, 2023 from a Toyota RAV4 that Mr. Joyner allegedly carjacked on May 2, 2023—during the second day of deliberations. First, jurors found a Chinese Yuan note in the pocket of a sweatshirt. There was some confusion about which sweatshirt. The jury foreperson initially told the Court that the Yuan was found in a "PIT sweatshirt," which was recovered on April 26, 2023, from a Honda HR-V that Mr. Joyner allegedly carjacked on April 13, 2023. July 23 Tr. at 8:17–23. However, FBI agents subsequently recovered the Yuan from the bottom of the evidence bag of the Steelers sweatshirt, not the PIT sweatshirt. *Id.* at 32:4–34:11. Second, jurors discovered a folded Post-it note with a white powdery substance in the two-toned jacket.

The jury raised these discoveries with the Court as jurors were being dismissed for the day on July 22. The following morning, the Court brought the parties up to speed. The Court proceeded to conduct a voir dire, asking each juror whether he or she had seen the new evidence

and could disregard it and be fair and impartial in light of it.  Every juror responded in the affirmative.  The Court then gave the jury curative instructions, asking jurors not to speculate as to the nature or origin of the discovered items, to disregard them, and not to consider them in any capacity in the deliberations.  July 23 Tr. at 30:9–32:2.  The Court also instructed the jury to return to the point in its deliberations immediately before those items were discovered.  *Id.* at 30:20–23.  The Court allowed the jury to continue deliberating "without prejudice to [the Defense] moving for the mistrial at any point."  *Id.* at 29:8–10.

Later that afternoon, Defense counsel formally moved for a mistrial.  *See* Def.'s 2d Mot. Mr. Joyner argues, first, that the newly discovered evidence irreparably prejudiced jury deliberations, and second, that the evidence violated his procedural and due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and Federal Rule of Criminal Procedure 16.  The Court addresses each argument in turn.

### 1.  The New Evidence Was Harmless

"[I]t is perfectly plain that the jury room must be kept free of evidence not received during trial, and that its presence, if prejudicial, will vitiate the verdict."  *Dallago v. United States*, 427 F.2d 546, 553 (D.C. Cir. 1969).  But while "extra-record information that becomes known to a jury is presumptively prejudicial, such a presumption is not conclusive, and may be overcome by a showing that the extra-record information was harmless."  *United States v. Marrow*, 412 F. Supp. 2d 146, 166 (D.D.C. 2006) (citation modified).  The Government bears the burden of "prov[ing] that any extraneous information . . . was harmless," and it may satisfy this burden "by showing: (1) that any extraneous remarks or information was isolated; (2) that the information in question was merely cumulative or duplicative of properly admitted evidence; (3) the information was relatively innocuous; *or* (4) that the Government's evidence was

overwhelming, thereby making the chance that [the] exposures could have affected the verdict exceedingly remote." *Id.* (emphasis added) (citation modified).

With respect to the Chinese Yuan found by the jury, the Court finds that it was cumulative of other properly admitted evidence.  At trial, the Government elicited testimony that on May 2, 2023, a 7-Eleven on Connecticut Avenue, NW, in Washington, D.C. was robbed by a man wearing a Pittsburgh Steelers sweatshirt, and that the robber stole a victim's wallet containing, among other things, "a Chinese Yuan" obtained "[f]rom a study abroad trip from [the victim's] freshman year." July 7 PM Tr. at 37:2–9.  Law enforcement subsequently recovered two Chinese Yuan from the center console of the Toyota RAV4 that Mr. Joyner allegedly carjacked.  A Pittsburgh Steelers sweatshirt was also found in the Toyota RAV4.  Thus, as the Government notes, the Yuan and Steelers sweatshirt helped link Mr. Joyner to that robbery, and the jury's discovery of an additional Yuan in the Steelers sweatshirt did not alter that established link.  *See* Gov't's Opp'n to Def.'s 2d Mot. at 5.  And because the extraneous Yuan was "merely cumulative of other, properly admitted [Yuan]," its "transmittal [to the jury] [wa]s harmless error." *United States v. Treadwell*, 760 F.2d 327, 339 (D.C. Cir. 1985).

The white powdery substance on the two-toned jacket, in contrast, is not cumulative of other properly admitted evidence.  In fact, this new evidence corroborates the testimony of a cooperating witness.  For context, the suspect of the robbery of an Exxon gas station in Hanover, Maryland on May 2, 2023, wore a two-toned jacket.  And the cooperating witness testified that Mr. Joyner paid him in "boot"—a type of drug—in exchange for driving him to that Exxon.  The presence of a powdery substance on the two-toned jacket corroborates that part of the cooperating witness's story in a novel way for the jury.  That is, the jury saw no other evidence and heard no other testimony associating Mr. Joyner with drugs.

8

Still, the Government's evidence established strong links between Mr. Joyner and the Exxon gas station robbery in other ways. Crucially, the cooperator identified Mr. Joyner as the robber of the final four robberies, including the one at the Exxon gas station. And with respect to the two-toned jacket, the cooperator identified the individual in a similar jacket as the robber from a screenshot of a surveillance video. *See* Gov't's Opp'n to Def.'s 2d Mot. at 6. The Court does not believe that the cooperator's testimony concerning "boot" was such a critical aspect of his story that, without seeing the powdery substance during deliberations, the jury might both disbelieve the cooperator and discredit the other physical and forensic evidence tying Mr. Joyner to the various robberies. In other words, the Court considers "the chance that [the] exposure[ ] [to the powdery substance] could . . . affect[ ] the verdict [to be] exceedingly remote." *Marrow*, 412 F. Supp. 2d at 166 (citation modified).

In any event, "[t]he burden of establishing harmlessness, which is placed on the government, is made less demanding by the trial judge's participation and use of all the tools necessary to evaluate the relevant facts." *United States v. Butler*, 822 F.2d 1191, 1196 (D.C. Cir. 1987). Here, the Court is comforted in its assessment about the harmlessness of the extraneous evidence to which the jury was exposed because the Court gave curative instructions to the jury and confirmed via a voir dire that each juror would be able to disregard the extraneous evidence and be fair and impartial in light of it during the deliberations. *See Kelly v. Hubbard*, 20 F. App'x 623, 624 (9th Cir. 2001) (declining to find prejudice where "the jury inadvertently discovered marijuana that no one realized was inside of a wallet introduced into evidence" and the trial judge "examined each juror, all of whom indicated the extraneous evidence had no effect on their verdict" and "gave a curative instruction that the items found in the wallet could not be considered, negating any potential prejudicial impact"). On a motion for a mistrial, the Court is

9

well within its authority "to weigh the relevant factors [regarding potential juror bias]," including "the possibility of removing juror taint by a limiting instruction," to "determine whether the presumption of prejudice has been rebutted." *United States v. Williams*, 822 F.2d 1174, 1188–89 (D.C. Cir. 1987).

    2.  The New Evidence Did Not Violate Mr. Joyner's Procedural and Due Process Rights

Even if the extraneous evidence did not prejudicially affect jury deliberations, Mr. Joyner contends that it violated his procedural and due process rights under *Brady* and Rule 16.  Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.  To prove a *Brady* violation, the defendant must demonstrate that: (1) "[t]he evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) the "evidence [was] suppressed by the [government], either willfully or inadvertently;" and (3) "prejudice . . . ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  To satisfy the prejudice prong, the suppressed evidence must be "material," meaning there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280–82 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  Furthermore, under Rule 16(a)(1)(E), upon a defendant's request, the government must permit the defendant to "inspect" items within its possession, custody, or control that: (1) are "material to preparing the defense," (2) the government intends to use in its case-in-chief, or (3) were obtained from or belong to the defendant.  Fed. R. Civ. P. 16(a)(1)(E).

The Court finds that the extraneous evidence did not violate Mr. Joyner's procedural or due process rights.  First, under *Brady*, neither the Chinese Yuan nor the white powdery

substance is exculpatory. Mr. Joyner appears to concede that the powdery substance is not exculpatory. As for the Yuan, Mr. Joyner makes much of the fact that the jury foreperson testified that it was found in the pocket of the PIT sweatshirt. *See* Def.'s 2d Mot. at 7, 11. That testimony was concerning because the PIT sweatshirt was recovered by law enforcement *before* the robbery of the Connecticut Avenue 7-Eleven took place. However, as noted above, FBI agents later recovered the Yuan from the evidence bag containing the Steelers sweatshirt. The Yuan therefore *inculpates* Mr. Joyner, as other evidence at trial established that the robber of the Connecticut Avenue 7-11 wore a Steelers sweatshirt and stole a wallet containing Chinese Yuan. Furthermore, the Yuan is also not impeaching material. Although, as Mr. Joyner observes, the robbery victim testified that he had "a" Chinese Yuan in his wallet, not several Yuan, the Defense was already aware before trial that law enforcement had recovered two Chinese Yuan from the Toyota RAV4. Defense counsel could have sought to impeach the witness about the amount of stolen Chinese Yuan but chose not to do so.

Second, Mr. Joyner argues that the extraneous evidence is impeaching material because its unknown existence "calls into question the integrity of the search and collection of all of the physical evidence presented at trial." Def.'s 2d Mot. at 12. The Court shares Mr. Joyner's amazement at law enforcement's failure to uncover the Chinese Yuan, note, and powdery substance in the physical evidence. Nevertheless, given the non-exculpatory character of such evidence, as well as the weight of the Defense's other evidence and arguments to the jury on the government's investigative shortcomings, the Court is not convinced that, with knowledge of this extraneous evidence, there is a "reasonable probability that . . . the result of the proceeding would [be] different." *Strickler*, 527 U.S. at 280 (quoting *Bagley*, 473 U.S. at 682).

11

Finally, the Court does not believe that there has been a Rule 16 violation.  The Defense had the opportunity to "inspect" the articles of clothing in which the extraneous evidence was found in the pre-trial discovery phase and during trial.  Fed. R. Civ. P. 16(a)(1)(E).  The Court does not believe—and Mr. Joyner does not point to authority holding otherwise—that the belated discovery by the jury of extraneous evidence within other properly admitted items that the Defense had a chance to inspect amounts to a Rule 16 violation.  *Cf. United States v. Defilippis*, 174 F.4th 1291, 1307 (11th Cir. 2026) ("Rule 16 protect[s] defendants from the undue surprise of having evidence introduced that they had no way of discovering, not against evidence they can obtain themselves.").

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motions for a mistrial (ECF Nos. 181, 182, 184) are **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 26, 2026                                    RUDOLPH CONTRERAS
                                                         United States District Judge